STATE, THE MORRIS CANAL AND BANKING COMPANY, PROSECUTORS, v. JOHN CLEAVER, RECEIVER OF TAXES OF THE CITY OF NEWARK.

The charter of the Morris Canal and Banking Company exempts from taxation property of the company used for the actual and necessary purposes of canal navigation. Such exemption held not to extend to a house and lot used for the residence of an assistant superintendent of the canal.

On *certiorari* to review taxes for 1883.

Argued at June Term, 1884, before Justices KNAPP and DIXON.

For the prosecutor, *T. N. McCarter.*

For the respondent, *W. B. Guild, Jr.*

The opinion of the court was delivered by

KNAPP, J.   The prosecutor was assessed for taxes, in the year 1883, upon a lot of land in the city of Newark known as No. 417 High street, having on it a three-story brick building, and was assessed at a valuation of $3200.   The ground relied upon for resisting the payment of this tax is that the property, at the time it was assessed, was and still is held by the prosecutors under an act entitled "An act to incorporate a company to form artificial navigation between the Passaic and Delaware rivers," passed December 21st, 1824, and was possessed and used for the actual and necessary purposes of canal navigation under said act, and therefore, by the fourth section of the said act, was exempt from this taxation.   The fourth section of the act, (*Pamph. L.* 1824, *p.* 158,) provides that no state, county, township or other public assessment, tax or charges whatsoever shall at any time be laid or imposed upon the said canal company, or upon the stocks and estates which

may become vested in them under this act; but this exemption shall not extend to any other estate or property of the company than such as is possessed, occupied and used by said company for the actual and necessary purposes of said canal navigation under this act, according to the true intent and meaning thereof. The company was authorized to construct canal or artificial navigation, and connect the tide-waters of the Delaware river with the Passaic, "with all the locks, works, devices, wharves, toll-houses and offices necessary for the use of said canal."

The question presented by this *certiorari* is whether this property is, within the meaning of the act, possessed, occupied and held by the said company for the actual and necessary purposes of the said canal navigation.

By repeated adjudications in this state, construction has been given to words of exemption in charters of like import with those used in this, and the result has been not merely to exclude a limitation which shall embrace only such property as is indispensable, but to include within their meaning property and appendages incident to the objects of the corporation, essential or obviously appropriate and advantageous to the completion and operation of its work, or, to use the language in the case of *State* v. *Hancock*, 6 *Vroom* 537, all the means suitable and proper to accomplish the end which the legislature had in view at the time of the enactment of the charter. But it must be left to the court to determine on the facts of each particular case, what property and what uses are necessary within their meaning as interpreted. "The mere declaration, under oath, of an officer or servant of the company, that certain property is necessary, will not entitle it to immunity from taxation." "The judgment of the court must be passed upon the question of necessity in each given case under the facts adduced, to show the purpose to which the lands are or are to be devoted." *State* v. *Woodruff*, 7 *Vroom* 94.

In *State* v. *Mansfield*, 3 *Zab*. 510, houses and lots owned by the company and let to workmen and employes were held not to be included within such exemption. So, a like exemp-

tion in the charter of the New Jersey Railroad and Trans-portation Company was held not to extend to houses and lots and vacant lands outside of the line of the company's road. *State* v. *Newark*, 1 *Dutcher* 315; *S. C. on error*, 2 *Dutcher* 519. In this last case, in the Court of Errors, the ruling in State *v.* Mansfield was approved. Piers and basins at Jersey City, belonging to the Morris Canal Company, in actual use for the purposes of accommodating boats engaged in canal navigation, and for the reception of their cargoes, were con-sidered as held by the company for actual purposes of canal navigation, and exempt from taxation. *State* v. *Betts*, 4 *Zab.* 555.

In a subsequent case in this court, in matter of taxation, it was held that the stables of this company near the canal out-let at Jersey City, occupied for the stabling of horses and mules used for drawing the company's boats, as well as a resi-dence at the stables for the stable-keeper, was property within the meaning of the charter in use for the actual and necessary purposes of canal navigation. *State* v. *Love*, 8 *Vroom* 60.

The use of this building is as a dwelling for one of the com-pany's division superintendents. It faces upon and is one of the numbered lots of High street, in Newark. The lot bounds along the southerly line of the tow-path of the canal, and the building occupies the width of the lot, except four or five feet lying between it and the tow-path. The duties of this officer of the company consist in the general superintendence of about ten miles of the company's canal, within which are two planes, the oversight of each of which he has. The testimony tends to show that the adjacency of this building to the canal enables him, when at his home, to take some special oversight of the plane at Newark. But this plane is in the care of two agents of the company, whose sole and specific duty it is to conduct the operations of this structure and the machinery connected with it, and to collect the tolls and keep the accounts for the company. It is shown, also, that no specific charge is made against the occupant of this dwelling for its use as rent, and it does not clearly appear whether or not he is paid reduced

wages on account of the otherwise free occupation of this property. Some slight advantages, doubtless, may incidentally result to the company at this point from his residence near to the canal, but they seem to me to be entirely too casual and incidental to have value in characterizing the uses of this property. I think the naked question presented is, whether a house for the residence of either a general or division superintendent of the company's canal furnished by the company to him, irrespective of its adjacency or remoteness from the canal, is property in such use by the company as to bring it within the tax exemption, and I think that it clearly is not. To hold otherwise would, in my judgment, be to disregard the determination of this court in the case of State v. Mansfield, above cited, the force of which, as to the matter decided, aside from the criticism upon the mode in which the judge pronouncing the opinion discussed the case, has never since been questioned. They could as well provide dwellings for their president and directors and other chief officers, at the company's expense, and claim them to be exempt from taxation on the ground that they were in the legitimate uses of the corporation for the purposes for which it was created. It differs entirely in character from the case of State v. Love, supra. There the property used was in keeping at the canal—its motive power—and the constant presence and abiding of some person having their mules and horses in charge was necessary as a part and parcel of that arrangement. Here, for all the ordinary purposes of this officer's employment, he might as well have a residence assigned to him in any other part of the city of Newark, or, indeed, in any other city near to that part of the canal under his supervision. I am unable to discover any force in the fact proved in the case, that for twelve years this property has remained untaxed, unless it be to show that the assessor in that district in 1883 was more faithful in duty than those in office before him.

We conclude that this tax was lawfully assessed, and should be affirmed, with costs.